**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00064-HBB**

**JASON WILSON**                                                                          **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER[1]**
**SOCIAL SECURITY ADMINISTRATION**                                  **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Jason Wilson ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both Plaintiff (DN 14) and Defendant (DN 19) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12).   By Order entered February 8, 2021 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1   Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance Benefits on December 17, 2016 (Tr. 11, 179-82).   Plaintiff alleges to have become disabled on November 30, 2014, as a result of a back injury and anxiety (Tr. 11, 82-83, 98).   The claim was initially denied on April 4,[2] 2017, and the claim was again denied upon reconsideration on June 27,[3] 2017 (Tr. 11, 94-95, 96, 110). After these denials, Plaintiff filed a written request for a hearing (Tr. 11, 126-27).   Administrative Law Judge David Peeples ("ALJ") conducted a video hearing from Paducah, Kentucky on October 16, 2018 (Tr. 11, 51-53).   Virtually present at the hearing from Owensboro, Kentucky was Plaintiff and his attorney Sara Martin Diaz (Id.).   During the hearing, Kenneth Boaz testified as a vocational expert (Tr. 11, 51-53, 76-80).

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2014, the alleged onset date (Tr. 13).   At the second step, the ALJ determined Plaintiff's sole severe impairment was degenerative disc disease (Id.).   The ALJ also found Plaintiff's digestive disorders, status post leukemia, obesity, depression, panic disorder, and anxiety to be nonsevere (Tr. 14).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Tr. 15).

---

2   The ALJ's opinion listed the initial determination's denial date as April 11, 2017 (Tr. 11).   However, the signature of the Disability Adjudicator/Examiner on the determination listed the date as April 4, 2017, and this date was also present on the Disability Determination and Transmittal form (Tr. 94-95).   When faced with this discrepancy, the undersigned will use the April 4, 2017, date.

3   The ALJ's opinion listed the reconsideration determination's denial date as June 28, 2017 (Tr. 11).   However, the signature of the Disability Adjudicator/Examiner on the determination listed the date as June 26, 2017 (Tr. 110), and the Disability Determination and Transmittal form listed the date as June 27, 2017 (Tr. 96).   When faced with this discrepancy, the undersigned will use the date on the Disability Determination and Transmittal form: June 27, 2017.

2

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(a) except for the following limitations: Plaintiff can lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and walk 4 hours in an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance and kneel; occasionally stoop, crouch, and crawl; and avoid concentrated exposure to vibration and hazards such as unprotected heights and moving mechanical parts (Tr. 16).   The ALJ found Plaintiff is capable of performing past relevant work as a mortgage loan closer, as this work does not require the performance of work-related activities precluded by Plaintiff's RFC (Tr. 20).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, since February 24, 2017, the date the application was filed (Tr. 25).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 176).   The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

<u>CONCLUSIONS OF LAW</u>

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   <u>Cotton</u>, 2 F.3d at 695 (quoting

Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

### The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

4

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)     Is the claimant engaged in substantial gainful activity?

2)     Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)     Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)     Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)     Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.

Challenge to Findings 4 and 5: ALJ's Use of MRI Evidence

1. Arguments of the Parties

Plaintiff begins by arguing that "[t]he ALJ committed clear error in his treatment of the MRIs in [Plaintiff]'s medical records which directly influenced the holding" (DN 14-1 PageID 4645).   Plaintiff notes that the ALJ relied upon MRIs which were conducted without contrast (Id. at PageID 4645-46).   Plaintiff asserts that contrast "mak[es] it easier to detect herniated discs, pinched nerves, spinal tumors, spinal cord compression, and fractures" (Id. at PageID 4646) (quoting *Overview of MRI Contrast*, GE Healthcare (Aug. 13, 2018),

https://www.gehealthcare.com/article/overview-of-mri-contrast).[4]   Later MRIs purportedly used contrast and showed more severe diagnoses (Id. at PageID 4646-47).   Therefore, "[i]n the absence of surgical intervention of any sort during the relevant time period, it was clear error for the ALJ to have relied so heavily on [the MRI without contrast] in making his determination of disability" (Id. at PageID 4647).

Defendant claims, "[T]he ALJ reasonably considered the objective medical evidence associated with Plaintiff's degenerative disc disease and appropriate determined that the medical evidence did not fully support his allegations of symptom severity" (DN 19 PageID 4673) (citing Tr. 20).   Defendant recounts several medical documents, which were also considered by the ALJ, showing "some neuromuscular deficits, but not to the extent alleged by Plaintiff[, and] . . . the ALJ explained that Plaintiff maintained normal motor strength, deep tendon reflexes, and sensation in both legs" (Id.) (citing Tr. 17, 18, 482).   As for Plaintiff's visit to the emergency department in August 2017, Defendant explained that the "MRI showed disc herniation but not central canal stenosis or lesion that would result in cauda equine syndrome" (Id.) (citing Tr. 18, 2166-67). When turning to Plaintiff's argument regarding the MRIs with and without contrast, Defendant claims, "Plaintiff is substituting his own interpretation of the 2016 and 2017 MRI findings for that of a medical professional" (Id. at PageID 4674).   "[R]ather than obtain[] a medical opinion to support his theory that the MRIs taken in 2016 were more accurate because they were performed 'with and without contrast,' Plaintiff simply cites to a website" (Id.).   As such, Defendant

---

4   The URL for the cited webpage has been modified to the current, accurate page, as the URL cited in Plaintiff's Fact and Law Summary is now "dead."   This change appears to be the result of GE Healthcare's website structure undergoing some modifications and is not the result of any misciting.   Hereinafter, the Court will utilize the modified URL in its citations.

contends that Plaintiff "failed to meet his burden of producing medical evidence to support his conclusion" (Id.) (citing Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003).

    2.  Discussion

The Court will begin with Plaintiff's use of the "clear error" standard in his argument (*see* DN 14-1 PageID 4645).   The "clear error" standard applies when a district judge reviews a magistrate judge's report and recommendation to which no timely objection has been filed.   *See* FED. R. CIV. P. 72 Advisory Committee Note Subdivision (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); Mitchum v. Saul, No. 2:19-CV-02533-JPM-dkv, 2020 WL 1493482, at *1 (W.D. Tenn. March 27, 2020); Samona v. Comm'r of Soc. Sec., No. 15-CV-11713, 2018 WL 2159893, at *1 (E.D. Mich. May 10, 2018).   The "clear error" standard also applies when a party moves a district court to alter or amend its judgment under FED. R. CIV. P. 59(e). *See* Moore v Berryhill, No. 4:17-CV-00091-HBB, 2018 WL 2197974, at *1 (W.D. Ky. May 14, 2018).   Neither situation exists here.   Instead, Plaintiff is utilizing the "clear error" standard in his challenge of the final decision of the Commissioner.   But the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)).   Thus, the Court declines Plaintiff's invitation to apply the "clear error" standard.

As Plaintiff filed his application prior to March 27, 2017, the rules in 20 C.F.R. § 404.1527 apply to the ALJ's assignment of weight to the medical opinions in the record.   The regulations require Administrative Law Judges to evaluate every medical opinion in the record.   20 C.F.R. § 404.1527(c).   The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. § 404.1527(c).   If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source.   20 C.F.R. § 404.1527(c).

In assessing a claimant's RFC, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings.   20 C.F.R. § 404.1529; Social Security Ruling 16-3p.   A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged.   20 C.F.R. § 404.1529(a).   In determining whether a claimant suffers from debilitating pain and/or other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies.

First, the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id.   When, as

in this case, the reported pain and/or other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged.   20 C.F.R. § 404.1529(c)(3).

The Court will now turn to Plaintiff's use of a hyperlink to a GE healthcare to describe the difference between MRIs with and without contrast.   It has repeatedly been held, "As a lay person, however, the ALJ [is] simply not qualified to interpret raw medical data in functioning terms [with] no medical opinion support[ing] the determination."   Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); *see also* Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."); Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 726-27 (6th Cir. 2013); Brown v. Saul, No. 1:19-CV-00165-HBB, 2020 U.S. Dist. LEXIS 155860, at *10-12 (W.D. Ky. Aug. 27, 2020).   While those cases pertain to Administrative Law Judges who extend beyond their purview and into the medical realm, the same philosophy prohibiting lay persons from interjecting their unqualified interpretations of medical evidence also applies to Plaintiff and this Court.   *See* Schwarz v. Saul, No. 5:19-CV-00102-LLK, 2020 U.S. Dist. LEXIS 84067, at *2-3 (W.D. Ky. May 13, 2020) ("While Plaintiff was arguing that, as a lay person, the ALJ was not qualified to interpret raw medical data in functional terms, the same applies to Plaintiff and this Court.").

In the present case, rather than utilize professional opinions of someone who is medically trained, Plaintiff cites to a link which provides an overview of MRIs and explains the differences and uses of contrast during MRIs (DN 14-1 PageID 4646) (quoting *Overview of MRI Contrast*, GE HEALTHCARE (Aug. 13, 2018), https://www.gehealthcare.com/article/overview-of-mri-

contrast).   Regardless of how legitimate the information presented on GE Healthcare's webpage may look, Plaintiff and the Court are not medical professionals equipped to distinguish the use or non-use of contrast when conducting an MRI and describe what may or may not be observed depending on whether contrast is used.   As such, the Court will not consider the information presented from the GE Healthcare website.

Now looking to the determination, the ALJ, when considering Plaintiff's degenerative disc disease, found that "the objective medical evidence does not demonstrate the severity of [Plaintiff]'s subjective statements" (Tr. 17).   The ALJ then went on to describe the various findings and procedures in Plaintiff's medical history, including: spondylolisthesis at L4-L5 and a herniated disc at L5-S1 in December 2014; lumbar TILF soon thereafter; a CT scan in February 2016 which showed moderate to severe left foraminal stenosis; an MRI in April 2016 which showed anterolisthesis and moderate left foraminal narrowing at the exiting left L5 nerve root; an MRI in November 2016 showing enhancing epidural scar material at L4-L5 that might impinge on the exiting left L4 nerve root or on the downward traveling L5 nerve root; some neuromuscular deficits but not to the extent alleged; 5/5 motor strength, 2+ deep tendon reflexes, and normal sensation of the bilateral lower extremities; some instances of visits to the emergency department for low back pain and leg pain, but Plaintiff had positive straight leg raising, lumbar tenderness, and unassisted gait; in August 2017, after attempting to pull a lawnmower out of a ditch, Plaintiff visited the emergency department for an MRI which identified a small S1 disk herniation but no central canal stenosis or lesion that would result in cauda equine syndrome; electrodiagnostic testing found mild motor neuropathy of the bilateral lower extremities, which led to the possible conclusion that it was the result of receiving anti-cancer treatment as a child; inpatient

rehabilitation in September 2017, where Plaintiff used a rolling walker for a week; after being discharged from rehabilitation, Plaintiff reported right radicular symptoms and continuing left foot drop; periodic reduced sensation and a limping, antalgic gait; Plaintiff's BMI remaining in the low 30s kg/m2 with no medically documented reflex loss, while he also maintained full alertness, orientation, range of motion, and motor strength; and, in October 2018, Plaintiff's testing for nerve root disease were negative (Tr. 17-18) (citing 298-300, 467-523, 524-1308, 2140-2163, 2164-2219, 2220-2306, 2342-3137, 3371, 4543-4554).    While acknowledging "a history of severe degenerative disc disease[,]" the ALJ found that "the objective medical simply does not demonstrate the severity of [Plaintiff]'s subjective statements[,]" but the ALJ "nevertheless considered the potential for exacerbated lumbar symptoms in assessing the . . . lifting, carrying, pushing, and pulling limitations" (Tr. 18).

While Plaintiff may claim that the ALJ impermissibly relied upon certain MRIs over others (DN 14-1 PageID 4645-47), the ALJ's longitudinal review of the medical record clearly shows otherwise.    While the ALJ did discuss the April 2016, November 2016, and August 2017 MRIs, the ALJ also considered examinations that occurred before and after those MRIs (Tr. 17-78).    The totality of the evidence in the record, particularly in light of the ALJ's thorough review of the record, provides substantial evidence that the ALJ did not impermissibly use the August 2017 MRI over other medical evidence in considering Plaintiff subjective statements.    Further, the ALJ complied with the applicable law in this portion of the determination.    As a result, Plaintiff's argument under this claim fails.

Challenge to Finding No. 4: Listings 1.02 and 1.04

1. Arguments of the Parties

Next, Plaintiff contends, "The ALJ committed clear error when he found that [Plaintiff]'s degenerative disc disease did not meet listings 1.02 and 1.04" (DN 14-1 PageID 4647).   Using the previous argument, Plaintiff states that the ALJ erred by utilizing MRIs without contrast when there were MRIs with contrast that showed a more severe status (Id.).   Further, Plaintiff argues that the record is "replete" with medical records "that objectively prove that [Plaintiff's] physical condition would not have supported a full-time job during the relevant period and that he would meet listings 1.02 and 1.04" (Id. at PageID 4648).   Plaintiff cites to several notations in the record "that indicate his degenerative disc disease was worsening significantly, in spite of the August 2017 MRI with no 'acute findings' according to the ALJ" (Id.) (citing Tr. 2229, 2239-40, 2260, 2284-87).   Thus, Plaintiff asserts that the ALJ's decision to find that Plaintiff did not meet Listings 1.02 and 1.04 was not supported by substantial evidence (Id. at PageID 4649).

Defendant disagrees with Plaintiff's argument about Listings 1.02 and 1.04, as Defendant contends that "Plaintiff fails to present specific medical findings to satisfy the criteria for Listings 1.02 or 1.04" (DN 19 PageID 4672).   "[T]he ALJ determined that laboratory findings did not explicitly confirm a spine disorder resulting in nerve root or spinal cord compression for a continuous 12-month period[, and . . . t]he ALJ found that Plaintiff did not demonstrate sensory or reflex loss and did not show that his lumbar spinal stenosis or left foot drop resulted in an inability to ambulate effectively . . ." (Id.) (citing Tr. 15).   Furthermore, "Plaintiff fails to provide any medical evidence that he had gross anatomical deformity of a joint, chronic joint pain and stiffness, signs of limitation of motion or other abnormal motion of the joint" (Id.).   While Plaintiff may

12

cite some treatment notes to demonstrate that his degenerative disc disease was "worsening significantly[,] . . . [w]ithout more, Plaintiff failed to meet his burden of demonstrating that he met Listing 1.02 or 1.04" (Id. at PageID 4672-73).

    2.  Discussion

    As with the previous contention, the Court will begin with Plaintiff's use of the "clear error" standard (see DN 14-1 PageID 4647). The "clear error" standard applies when a district judge reviews a magistrate judge's report and recommendation to which no timely objection has been filed. See FED. R. CIV. P. 72 Advisory Committee Note Subdivision (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); Mitchum v. Saul, No. 2:19-CV-02533-JPM-dkv, 2020 WL 1493482, at *1 (W.D. Tenn. March 27, 2020); Samona v. Comm'r of Soc. Sec., No. 15-CV-11713, 2018 WL 2159893, at *1 (E.D. Mich. May 10, 2018). The "clear error" standard also applies when a party moves a district court to alter or amend its judgment under FED. R. CIV. P. 59(e). See Moore v Berryhill, No. 4:17-CV-00091-HBB, 2018 WL 2197974, at *1 (W.D. Ky. May 14, 2018). Neither situation exists here. Instead, Plaintiff is utilizing the "clear error" standard in his challenge of the final decision of the Commissioner. But the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied. See 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)). Thus, the Court declines Plaintiff's invitation to apply the "clear error" standard.

At the third step, a claimant will be found disabled if her impairment meets or medically equals one of the listings in the Listing of Impairments.   20 C.F.R. § 404.1520(a)(4)(iii); Turner v. Comm'r of Soc. Sec., 381 F. App'x 488, 491 (6th Cir. 2010).   The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."   20 C.F.R. § 404.1525(a).

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing."   20 C.F.R. § 404.1525(c)(3).   A claimant must satisfy all the criteria to "meet" the listing and be deemed disabled.   See 20 C.F.R. § 404.1525(c)(3) and (d); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984).   However, a claimant is also deemed disabled if her impairment is the medical equivalent of a listing.   20 C.F.R. § 404.1520(a)(4)(iii); Turner, 381 F. App'x at 491.   Medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment."   20 C.F.R. § 404.1526(a).   "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."   Reynolds v. Comm'r Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011).   Additionally, the administrative law judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment is the medical equivalent of a listing.   See 20 C.F.R. § 404.1526(c) and (d); Social Security Ruling 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).

14

An Administrative Law Judge will find that an impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment."   20 C.F.R. § 404.1526(a).   Medical equivalence can be found in one of three ways:

(1)(i) If [the claimant has] an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but —

(A) [the claimant does] not exhibit one or more of the findings specified in the particular listing, or

(B) [the claimant] exhibit[s] all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

(ii) [The Administrative Law Judge] will find that [the claimant's] impairment is medically equivalent to that listing if [the claimant has] other findings related to [the claimant's] impairment that are at least of equal medical significance to the required criteria.

(2) If [the claimant has] an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, [the Administrative Law Judge] will compare [the claimant's] findings with those for closely analogous listed impairments.   If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the Administrative Law Judge] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing.

(3) If [the claimant has] a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 404.1525(c)(3)), [the Administrative Law Judge] will compare [the claimant's] findings with those for closely analogous listed impairments.   If the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed

> impairment, [the Administrative Law Judge] will find that [the claimant's] combination of impairments is medically equivalent to that listing.

20 C.F.R. § 404.1526(b); *see also* SSR 17-2p.   The Sixth Circuit has observed that this "regulation allows for variation in the number, type, or severity of the claimant's conditions, so long as the claimant's overall impairment is 'at least of equal medical significance' to a listed impairment." Biestek v. Comm'r of Soc. Sec., 880 F.3d 778, 784 (6th Cir. 2017).

For Plaintiff to meet Listing 1.02, *Major Dysfunction of the Joint(s) (Due to Any Cause)*, Plaintiff must show four requirements: (1) gross anatomical deformity of a joint, (2) chronic joint pain and stiffness, (3) signs of limitation of motion or other abnormal motion of the joint, and (4) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint.   20 C.F.R. Part 404, Subpt. P, App. 1, § 1.02.   Additionally, Plaintiff must also show either (A) involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, or (B) involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively.   Id.

Looking to Listing 1.04, *Disorders of the Spine*, Plaintiff will meet the Listing only if he shows he has a disorder of the spine, like degenerative disc disease, with: (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), or (B) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe

16

burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours, or (C) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.  20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04

The ALJ's opinion specifically mentioned both Listings and how "the available medical evidence does not demonstrate the criteria" to meet or medically equal either Listing (Tr. 15). The ALJ recounted:

> [Plaintiff] underwent L4-L5 transforaminal lumbar interbody fusion (TILF) on May 11, 2015.  Computed Tomography (CT) dated February 2016 identified fusion changes at L5-S1 with moderate to severe left foraminal stenosis.  Two months later, Magnetic Resonance Imaging (MRI) documented disc bulging at L5-S1 with mass effect on the exiting left L5 nerve root.  Repeat MRI from November 2016 showed enhancing epidural scar material at L4-L5 that might impinge on the exiting left L4 nerve root or on the downward traveling L5 nerve root at the location.  However, MRI dated August 2017 identified no acute abnormality.  Overall, laboratory findings do not explicitly confirm a spine disorder resulting in nerve root or spinal cord compression for a continuous 12-month period.  In the alternative, there is no evidence that the medical criteria of "paragraph A" are simultaneously present for the requisite 12-month period.  More specifically, he has not shown any continuing sensory or reflex loss.  Furthermore, there is no evidence that his lumbar spinal stenosis or left foot drop ha[s] resulted in an inability to ambulate effectively . . . .

(Tr. 15-16) (record citations omitted).  While Plaintiff cites to the four dates which illustrates how Plaintiff's degenerative disc disease "was worsening significantly" (DN 14-1 PageID 4648) (citing

Tr. 2229, 2239-40, 2260, 2284-85, 2287), Plaintiff has not shown, at any stage, that he suffered

from a gross anatomical deformity of a joint or *chronic* joint pain and stiffness as required by

Listing 1.02.

Further, while Plaintiff utilized an assistive device to walk during inpatient rehabilitation

(Tr. 2539), Plaintiff's subsequent visit to Owensboro Health, just nine days later, contained no

notations or mentions of assistive devices (Tr. 2238-49).   Two and a half months later, Plaintiff

again visited Owensboro Health, and, again, the record does not mention the use of assistive

devices (Tr. 2258-69).   Additionally, Plaintiff, at the administrative hearing, testified that he is

able to assist with chores and will go out and go shopping on a "normal" day (Tr. 73).   Plaintiff's

mother, in a function report, noted that Plaintiff loads the dishwasher, does laundry, mows the

lawn, checks the mail, can leave the residence alone, can drive, goes out to eat or to movies with

others, visits friends, and that Plaintiff has "[n]o problem walking" (Tr. 217-20).   Moreover,

Plaintiff's mother did not select that Plaintiff used crutches, a cane, a walker, or a wheelchair

(Tr. 221).   Plaintiff's mother's answers are consistent with Plaintiff answers in his own function

report (Tr. 226-29).   One answer to note is that Plaintiff recounted that he tries to go outside and

walk daily (Tr. 227).   Therefore, Plaintiff cannot show he is unable to ambulate effectively, and

the ALJ's finding of Plaintiff not meeting Listing 1.02 is supported by substantial evidence.

Looking to the requirements of Listing 1.04, it is plainly evident that Plaintiff does not

meet (B) and (C).   *See* Sheeks v. Comm'r of SSA, 544 F. App'x 639, 641 (6th Cir. 2013) ("The

relevant regulations require the ALJ to find a claimant disabled if he meets a listing.   Yet they do

not require the ALJ to address every listing—and with ample reason.   There are a hundred or so

listings. In the normal course, as a result, the ALJ need not discuss listings that the applicant clearly

18

does not meet . . . ."). Even then, the ALJ noted that "laboratory findings do not explicitly confirm a spine disorder resulting in nerve root or spinal cord compression for a continuous 12-month period" (Tr. 15). Notably, Plaintiff does not assert, at any point, that the ALJ improperly found that Plaintiff did not have a spine disorder resulting in nerve root or spinal cord compression for a continuous 12-month period (*see* DN 14-1 PageID 4647-49). Instead, the cited documentation merely shows what Plaintiff purports to be worsening symptoms and pain (*see* id.).

As for sensory or reflex loss, the ALJ found Plaintiff "has not shown any continuing . . . loss" (Tr. 16). Reviewing Plaintiff's Fact and Law Summary, the closest Plaintiff comes to asserting a sensory loss is an uncited statement that Plaintiff "had a positive straight leg raise test, a left foot drop, and even decreased motor strength and sensation" (DN 14-1 PageID 4648). However, the medical records that Plaintiff cites do not substantiate this assertion (*see* id.). A substantive review of the medical documentation does not support Plaintiff's contention of sensation loss either. Therefore, the ALJ's determination that Plaintiff does not meet Listing 1.04 is supported by substantial evidence.

Plaintiff has not attempted to argue that he medically equals Listings 1.02 and 1.04; instead, he solely focuses on the "meets" aspect (DN 14-1 PageID 4647-49). Even then, Plaintiff has not satisfied the requirements of showing that he medically equals either Listing. Looking to the three methods with which a court may find medical equivalence, Plaintiff plainly does not satisfy sections 2 and 3, as Plaintiff's alleged impairment is listed in Appendix 1, and Plaintiff's argument is not premised upon multiple impairments to equal the Listing. Turning to the first method, as the Court has previously discussed, Plaintiff does not meet at least one of the findings required for both Listing 1.02 and 1.04. However, Plaintiff has not argued, nor shown, that he suffers from

19

impairments that are medically equal in severity and duration.   As such, Plaintiff has not shown that he is entitled to medical equivalence for either Listing.

The Sixth Circuit has previously opined, "[Plaintiff] must do more than show that the ALJ's decision leaves open the question whether he meets [the Listing].   He must show that the open question is a *substantial* one that justifies remand." Sheeks, 544 F. App'x at 641-42 (citing Abbott v. Sullivan, 905 F.2d 918, 925 (6th Cir. 1990)) (emphasis in original); *see e.g.* Luster v. Comm'r of Soc. Sec., No. 13-CV-14748, 2015 U.S. Dist. LEXIS 39103, at *16 (E.D. Mich. Mar. 27, 2015).   In the present case, Plaintiff does not meet this threshold as to meeting or medically equaling Listings 1.02 and 1.04, and the ALJ's determination has been shown to be supported by substantial evidence and follows the applicable law.   Therefore, Plaintiff is awarded no relief.

Challenge to Finding 5: Weight Awarded to Dr. Khanh Nguyen

1.   Arguments of the Parties

Plaintiff's third argument claims that "[t]he ALJ failed to afford proper weight to the opinions of [Plaintiff's] treating physician" (DN 14-1 PageID 4649).   The ALJ awarded "very little weight" to the RFC Questionnaire completed by Dr. Khanh Nguyen, Plaintiff's treating physician (Id.) (citing Tr. 19).   Plaintiff disputes this award by reiterating that Plaintiff "has repeatedly communicated with his providers that his painkillers have not adequately addressed his pain[; a]dditional surgery has been recommended, but the surgeons are putting the surgery off for as long as possible based on his young age[; and . . .] he has attempted physical therapy, injections, and even surgical interventions, but to no avail" (Id.).   Based upon the volume of medical evidence and the applicable regulations, Plaintiff contends that Dr. Nguyen's opinion should have been awarded great weight (Id. at PageID 4650).

Defendant, in turn, asserts that "[t]he ALJ reasonably discounted Dr. Nguyen's opinion and provided a number of good reasons for doing so" (DN 19 PageID 4677).   "The ALJ explained that Dr. Nguyen's opinion was inconsistent with his own treatment notes, which did not indicate any symptoms or limitations associated with Plaintiff's arms" (Id.) (citing Tr. 19; Hill v. Comm'r, 560 F. App'x 547, 549-50 (6th Cir. 2014); Fry v. Comm'r, 476 F. App'x 73, 75-76 (6th Cir. 2012)).   Moreover, Defendant discusses Plaintiff's required surgery and hospitalization in 2014, the lack of evidence of frequent or intense symptomatic deterioration, and Plaintiff's alertness and orientation despite complaints of pain (Id.).

2.   Discussion

As Plaintiff filed his application prior to March 27, 2017, the rules in 20 C.F.R. § 404.1527 apply to the ALJ's assignment of weight to the medical opinions in the record.   The regulations require Administrative Law Judges to evaluate every medical opinion in the record.   20 C.F.R. § 404.1527(c).   The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. § 404.1527(c).   If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source.   20 C.F.R. § 404.1527(c).

The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency,

> and supportability, but only if a treating-source opinion is not
> deemed controlling.   20 C.F.R. § 404.1527(c).   Other factors
> which tend to support or contradict the opinion" may be considered
> in assessing any type of medical opinion.   *Id.* § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013).

The procedural requirements to assign weight to the opinion of a treating source and provide "good reasons" for that weight serves both to ensure adequacy of review and to give the claimant a better understanding of the disposition of his case.   Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011) (citing Rogers v. Comm'r, 486 F.3d 234, 242 (6th Cir. 2007)).   "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the claimant's procedural rights.'"   Cole, 661 F.3d at 937.   The Sixth Circuit has indicated it will not hesitate to remand when it encounters decisions from Administrative Law Judges that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.   Id. at 939 (citations omitted).   However, a violation of these procedural requirements can be deemed "harmless error" if one of the following requirements is satisfied:

> (1) a treating source's opinion is so patently deficient that the
> Commissioner could not possibly credit it; (2) if the Commissioner
> adopts the opinion of the treating source or makes findings
> consistent with the opinion; or (3) where the Commissioner has met
> the goal of § 1527(d)(2) . . . even though she has not complied with
> the terms of the regulation.

Id. at 940 (citations omitted).

Here, the ALJ gave "very little weight" to the opinion of Dr. Khanh Nguyen, Plaintiff's family medicine physician (Tr. 19).   This weight was the result of Dr. Nguyen completing an RFC assessment which opined multiple limitations, but the ALJ found that these limitations were contrary to Dr. Nguyen's own treatment notes (Id.).   More specifically, "[Plaintiff]'s largely intact

motor strength and sensation demonstrates that the absence of greater exertional or postural limitations" (Id.).   Plaintiff's treatment plan after hospitalization and rehabilitation has "remained otherwise stable[,]" and "[t]here is no evidence of frequent or intense symptomatic deterioration to warrant any absenteeism limitation" (Id.).   "Furthermore, [Plaintiff] has remained fully alert and oriented[, and h]is overall cognitive abilities have been average, despite occasional complaints of pain" (Id.).

On May 8, 2017, Dr. Nguyen completed a physical RFC questionnaire in which Dr. Nguyen described Plaintiff's diagnosis as lumbar stenosis, post-op infection, and depression, with a "poor" prognosis (Tr. 2132).   When identifying the "clinical findings and objective signs," Dr. Nguyen described an April 22, 2015, MRI showing an L4 disc protrusion and a November 17, 2016 MRI showing moderate to severe L3-S1 neural foraminal stenosis (Id.).   Dr. Nguyen also marked that Plaintiff's impairments causes pain or other symptoms that were severe enough to constantly interfere with his attention and concentration, and that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations that Dr. Nguyen later describes (Tr. 2133).   Additionally, marked limitations where Plaintiff was "[i]ncapable of even 'low stress' jobs," could not walk a city block without rest or severe pain, can only sit for five minutes before needing to stand up, can only stand for five minutes before needing to sit down or walk around, could only sit and stand/walk for less than two hours of an eight-hour work day, would need five-minute walking periods every five minutes during an eight-hour work day, would need to take fifteen minute unscheduled breaks every hour during an eight-hour work day, could never lift and carry less than ten pounds, can occasionally hold his head in a static position, can occasionally turn his head or look in any direct, is likely to be absent from work more than four days per month

as a result of his impairments, and Plaintiff can never twist, stoop, crouch or squat, climb ladders or stairs (Tr. 2133-35).   Moreover, Dr. Nguyen noted that "[d]ue to [Plaintiff]'s chronic pain [and] depression, [Plaintiff] is not able to perform simple duties at work" (Tr. 2135).

As the Court has previously noted, Plaintiff testified, at the administrative hearing, that he is able to assist with chores and will go out and go shopping on a "normal" day (Tr. 73).   Plaintiff's mother, in a function report, noted that Plaintiff loads the dishwasher, does laundry, mows the lawn, checks the mail, can leave the residence alone, can drive, goes out to eat or to movies with others, visits friends, and that Plaintiff has "[n]o problem walking" (Tr. 217-20). Plaintiff's mother's answers are consistent with Plaintiff answers in his own function report (Tr. 226-29). One answer to note is that Plaintiff recounted that he tries to go outside and walk daily (Tr. 227).

Looking to the medical records cited by the ALJ, where Dr. Nguyen was the provider (Tr. 2120-29), there is no information present that would support these stringent limitations.   The records mainly recount past visits and Plaintiff's medication regime, discusses plans for pain management, and includes assessments which simply list "chronic low back pain" and/or "GAD (generalized anxiety disorder)" with Plaintiff directed to continue to taking his medication (Id.). Looking to previous medical records (Tr. 420-66), there is also no information presented that would substantiate the limitations.   The assessments in those records contain a variety of findings, including: seasonal allergies, GAD (generalized anxiety disorder) or anxiety disorder, a history of diverticulitis of the colon, infected dental carries, low back pain, low back pain without sciatica, gastroenteritis, diarrhea, overweight, and acute frontal sinusitis (recurrence not specified) (Id.).

When comparing the medical records to Dr. Nguyen's opined limitations, the ALJ correctly stated that the limitations imposed "underestimates [Plaintiff]'s abilities" (Tr. 19).   Moreover, the ALJ then articulated several instances where Dr. Nguyen's opined limitations were not compatible with the record.   Therefore, the ALJ complied with applicable law, and there is substantial evidence in the record to support the ALJ's conclusion regarding the weight awarded to Dr. Nguyen's opinion.   As such, Plaintiff is not awarded to any relief under this claim.

Challenge to Finding No. 5 and 6: Light Work RFC and Past Relevant Work

1.   Arguments of the Parties

Finally, Plaintiff argues that "[t]he ALJ was in error in finding [Plaintiff] capable of light work" (DN 14-1 PageID 4650-51).   The vocational expert testified that Plaintiff's occupational history as a mortgage loan closer was classified as a sedentary position, and the limitations proposed by the hypothetical question from the ALJ qualified as sedentary (Id. at PageID 4651). The proposed limitations in the hypothetical question was later adopted in the ALJ's determination (Id.).   However, Plaintiff argues that the utilized the limitations require a sedentary RFC, while the ALJ found Plaintiff to have an RFC capable of "light work" (Id.).   Thus, "[t]he ALJ simply failed to recognize the limiting effect of [Plaintiff]'s severe conditions[, and] . . . he should have been limited to less than sedentary work" (Id. at PageID 4651-52) (emphasis omitted).   At the end of his argument, Plaintiff proclaims, "As seen above, [Plaintiff] would need a job where he could take unscheduled and unpredictable breaks throughout the day, and even then would not be a reliable employee" (Id. at PageID 4652).   Plaintiff's argument cites to no law, regulation, or precedent that would require remand due to the ALJ's decision to opine a "light work" RFC (*see generally* Id. at PageID 4651-52).

26

Defendant disputes Plaintiff's argument by claiming, "The [vocational expert] testified that a hypothetical individual with the same limitations the ALJ eventually included in the RFC could perform Plaintiff's past relevant work as a mortgage loan closer" (DN 19 PageID 4679) (citing Tr. 79).   "However, the ALJ's RFC limits Plaintiff to light work instead of the sedentary work," as the vocational expert testified that Plaintiff's past relevant work was classified as sedentary (Id.) (citing Tr. 16, 78).   As such, "because the [vocational expert] testified that a hypothetical individual could perform Plaintiff's past relevant work as a mortgage loan closer and the RFC included all of the limitations the ALJ presented to the [vocational expert] in the hypothetical at the hearing, any error by the ALJ was harmless" (Id.) (citing NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004)).

Moreover, to the extent "Plaintiff argues that the ALJ did not include all of the limitations in the hypothetical question to the [vocational expert]," Defendant contends that "the ALJ included additional work-related limitations to account for Plaintiff's impairments to the extent that they were supported by the medical evidence" (Id. at PageID 4679-80) (citing Tr. 79-80). Additionally, "[a] hypothetical question is not improper solely because it does not include all of Plaintiff's alleged impairments" (Id. at PageID 4680).   "Therefore, the ALJ's reliance on the [vocational expert]'s responses was appropriate because the questions contemplated the limitations that were supported by Plaintiff's medical record" (Id.).

2.   Discussion

At the fourth step in the sequential evaluation process, the Administrative Law Judge makes findings regarding the weight assigned to medical source statements in the record, the claimant's credibility, the claimant's RFC, the physical and mental demands of the claimant's past

27

relevant work, and the claimant's ability to return to the past relevant work.   In regard to the last finding, the relevant inquiry is whether the claimant can return to his past type of work rather than just his past job.   Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987); 20 C.F.R. § 404.1520(f).   It is the claimant's burden at step four of the sequential evaluation process to show an inability to return to any past relevant work, Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 19800), or to prove that a past job should not be considered relevant.   Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 109-10 (6th Cir. 1989).   By showing a medical basis for an impairment that prevents him from engaging in his particular occupation, the claimant establishes a *prima facie* case of disability.   Boren v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990).

To support a finding that a claimant can perform past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of his past job as actually performed, or as ordinarily required by employers throughout the national economy.   *See* Studaway, 815 F.2d at 1076; *see also* 20 C.F.R. § 404.1565; SSR 82-61.   Pursuant to SSR 82-61, a claimant may be found "not disabled" if he retains the RFC to perform the actual functional demands and duties of a particular past relevant job, and, considering the medical records, the vocational expert opined that the claimant could perform his past relevant work.

A vocational expert's testimony must be based on a hypothetical question which accurately portrays the claimant's physical and mental impairments.   Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).   A hypothetical question is not erroneous where at least one doctor substantiates the information contained therein.   Hardaway v. Sec'y of Health & Human Servs., 823 F.2d 922, 927-28 (6th Cir. 1987) (per curiam).   An ALJ properly incorporates

28

pain into a hypothetical question by including in it the functional limitations prescribed by plaintiff's treating physician, who is aware of the plaintiff's pain over the years in setting those limitations.  David v. Sec'y of Health & Human Servs., 915 F.2d 186, 189 (6th Cir. 1990). Furthermore, there is no requirement that the ALJ's hypothetical question to the vocational expert reflect the claimant's unsubstantiated complaints.  Id.  It is the Commissioner's job to evaluate the trustworthiness of the vocational expert's testimony.  Sias v. Sec'y of Health & Human Servs., 861 F.2d 475, 480 (6th Cir. 1988) (per curiam).  Finally, a physician's assessment of vocational factors does not command deference because a medical doctor is not an expert in this field.  Turley v. Sullivan, 939 F.2d 524, 527 (8th Cir. 1991) (per curiam) (Vocational factors were outside of doctor's expertise and, therefore, any opinion regarding vocational factors is subject to criticism.).

At the administrative hearing, the vocational expert testified that one of Plaintiff's past relevant jobs was as a mortgage loan closer, DOT 249.362-018, and was a skilled, SVP 5, sedentary RFC position (Tr. 78).  The ALJ proffered a hypothetical question which mirrored the limitations imposed in the determination's RFC, including lift and carry restrictions, standing and walking restrictions, and exposure avoidance limitations (Tr. 78-79).  The vocational expert remarked that it would be a sedentary position, and the hypothetical question would allow for past work as a mortgage loan closer, which is also a sedentary position (Tr. 79).

Reviewing the DOT, the vocational expert was correct when testifying that the occupation of mortgage loan closer was a skilled, SVP 5, sedentary RFC position, according to the DOT. While Plaintiff may contend that the vocational expert's testimony classifying a hypothetical person with the limitations imposed as "sedentary" (Tr. 79), the RFC assessment is the ALJ's ultimate finding of what the claimant can still do despite his physical and mental limitations.

29

20 C.F.R. §§ 404.1545(a), 404.1546.   Moreover, the ALJ cited SSR 00-4p to accept the testimony of the vocational expert "based on his knowledge and experience in the field" (Tr. 20).

The Court questions whether the "light work" RFC was a typographical error.   In Finding number 5, the ALJ found that Plaintiff has the RFC "to perform light work as defined in 20 CFR 404.1567(a)" (Tr. 16).   However, § 404.1567(a) discusses sedentary work and qualifies its limitations by restricting the weight for lifting: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."   The 10-pound lifting restriction is also present in the limitations imposed by the ALJ (Tr. 16).   Additionally, as Plaintiff and the Court have discussed, the ALJ proffered a hypothetical question which mirrored the RFC limitations articulated, the vocational expert remarked it would be a sedentary position, and the ALJ accepted the vocational expert's testimony (Tr. 20, 78-79).

Regardless of whether Plaintiff was restricted to "light work" or "sedentary work" with the limitations, the result would still remain the same: Plaintiff could still perform his past relevant work as a mortgage loan closer.   As Defendant has argued, any alleged error would be harmless, as the result would remain the same (DN 19 PageID 4679).   The United States Supreme Court has found that in instances where "remand would be an idle and useless formality[, precedent] does not require that we convert judicial review of agency action into a ping-pong game." NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969).   Like the Supreme Court's case before them, "[t]here is not the slightest uncertainty as to the outcome of the proceeding[, and] . . . [i]t would be meaningless to remand." Id.   Therefore, even if the ALJ did err in finding "light work", and the ALJ should have crafted a "sedentary work" RFC, *arguendo*, Plaintiff would still be able

30

to return to his past relevant work as a mortgage loan closer.   As such, any alleged error would be harmless.   The ALJ comported with applicable law, and the decision is supported by substantial evidence.

Next, Plaintiff points to his counsel's questioning of the vocational expert, where the expert opined that if Plaintiff was to miss two days a month consistently, then that level of absenteeism would preclude Plaintiff's past work (Tr. 79).   Plaintiff also discusses the potential of an unscheduled breaks accommodation, which the vocational expert stated would preclude all work (Tr. 79-80).   While Plaintiff may cite to the physical RFC questionnaire completed by Dr. Khanh Nguyen as a source for supporting the claim that Plaintiff requires unscheduled and unpredictable breaks throughout the day, the Court has already found that substantial evidence supports the ALJ's award of "very little weight" to the opinion of Dr. Nguyen and his proposed limitations. The Court has recounted the medical evidence where Dr. Nguyen was the acting provider, and the evidence did not support the stringent limitations proposed by Dr. Nguyen.   As noted above, there is no requirement that the ALJ's hypothetical question to the vocational expert reflect the claimant's unsubstantiated complaints.   David v. Sec'y of Health & Human Servs., 915 F.2d 186, 189 (6th Cir. 1990).   Therefore, the ALJ's determination not to include a limitation for unscheduled and unpredictable breaks is supported by substantial evidence.

When reviewing the vocational expert's testimony, the ALJ's RFC determination, and the limitations imposed by the RFC, the ALJ's finding that Plaintiff was not precluded from his past relevant employment as a mortgage loan closer was not contrary to applicable law, and the determination was supported by substantial evidence in the record.   Therefore, Plaintiff is awarded no relief under this claim.

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (Id.).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

September 21, 2021

Copies:        Counsel of Record

32